IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARTHUR WHITE, § | | |
| TDCJ #1236082, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. H-06-2734 |
| § | | |
| UNIVERSITY OF TEXAS § | | |
| MEDICAL BRANCH, *et al.*, § | | |
| § | | |
| Defendants. § | | |

## MEMORANDUM AND ORDER

State inmate Arthur White brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights. He proceeds *pro se* and *in forma pauperis*. At the Court's request, White supplemented his complaint with a more definite statement of his claims. (Doc. # 9). The sole remaining defendant, Nurse Suzanne Parker, has filed a motion for summary judgment. (Doc. # 52). White, with the assistance of appointed counsel, has filed a response. (Doc. # 53). After reviewing all of the pleadings, the summary judgment record, and the applicable law, the Court **grants** the defendant's motion and **dismisses** this case for reasons that follow.

### I. BACKGROUND

White is currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ") at the Ellis Unit in Huntsville, Texas. In August of 2006, White filed a civil rights complaint against the University of

Texas Medical Branch ("UTMB") and various health care workers employed by TDCJ or UTMB, concerning the level of medical care that he received at the Ellis Unit in December of 2004. The only remaining defendant is Suzanne Parker, who is a Licensed Vocational Nurse.[1]

In December of 2004, White was a forty-seven-year old inmate suffering from adult onset (Type II) diabetes. As part of his prescribed health care regimen, White was receiving two insulin injections every day at the Ellis Unit infirmary. White complains that he was denied adequate medical care or that care was delayed on or about December 6, 2004,[2] when Nurse Parker failed to provide him with treatment for a sore on his left big toe.

White explains that he saw Nurse Parker on December 6, 2004, when he reported to the unit infirmary for one of his daily insulin injections. During this encounter, White told Nurse Parker that he had a "hole" in his toe that needed to be "covered" or bandaged before it became infected. Nurse Parker did not pause to treat White's foot or refer him to a doctor immediately. Instead, Nurse Parker instructed White to submit a "sick call request" to schedule an appointment with a physician. White did not follow her instructions and he did

---

[1] White also sued Douglas Bertling; John Doe Brorby; Ray Carpenter; Nurse Kristi Flisowski; Nurse Margie Gonzales; Nurse Kathy Hawkins; Dr. Clay Keith; Nurse Rhonda Lee; Nurse Rose; Nurse Poppy Thomas; Dr. Betty Williams; and Jamie Williams. These individuals, along with UTMB, were dismissed previously in an order entered on November 28, 2007. (Doc. # 28).

[2] In his complaint and more definite statement, White claims that he was denied adequate medical care in December of 2005. (Docs. # 1, # 9). Medical records confirm that the medical problem at issue arose, if at all, in December of 2004. The Court has deemed the complaint amended to conform the dates therein to the medical records.

not complain about his toe again until December 11, 2004, when he was seen by a physician's assistant at the infirmary. Eventually, White developed gangrene and his infected toe was amputated.

In his pending civil rights complaint, White alleges that Nurse Parker should have referred him to a physician immediately on December 6, 2004, or treated him right away to prevent the infection. White blames Nurse Parker for delaying his access to treatment for his toe. He claims that she was "negligent," that she was unprofessional, and that she committed medical malpractice. (Doc. # 1; Doc. # 52, Exhibit C, Step 1 & 2 Grievances # 2006129511). White seeks $1.3 million in exemplary damages and $800,000 in compensatory damages. Nurse Parker has filed a motion for summary judgment, asserting qualified immunity and arguing that White cannot demonstrate a constitutional violation or show that her conduct was objectively unreasonable. The parties' contentions are discussed below under the applicable standard of review.

## II. STANDARD OF REVIEW

The defendant has filed a motion for summary judgment, which is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v.*

*ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  In deciding a motion for summary judgment, a reviewing court must determine whether the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  The moving party, however, need not negate the elements of the non-movant's case.  *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  The non-movant must do more than simply show that there is some "metaphysical doubt" as to the material facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,  587 (1986).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party" *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 478 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, a reviewing court will not assume "that the non-moving party could or would prove the necessary facts,' and will grant summary judgment 'in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in

favor of the nonmovant.'"  *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075) (emphasis in original).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.  *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).  A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.  *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000); *see also DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005).  Further, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *Id*. (internal citations and quotations omitted).

### III.     DISCUSSION — QUALIFIED IMMUNITY

To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate:  (1) a violation of the United States Constitution or of federal law; and (2) that the violation was committed by someone acting under color of state law.  *See Atteberry v. Nocona Gen. Hosp*., 430 F.3d 245, 252-53 (5th Cir. 2005) (internal citations omitted).  In this instance, White alleges that Nurse Parker denied him adequate medical care on December 6, 2004, in violation of the Eighth Amendment right to be free from cruel and unusual punishment.  Nurse Parker argues

that White has failed to establish a constitutional violation and that, even assuming that such a violation occurred, she is entitled to qualified immunity from White's claims against her.

Under the doctrine of qualified immunity, public officials acting within the scope of their authority are shielded "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Gates v. Texas Dep't of Protective and Regulatory Servs.*, 537 F.3d 404, 418 (5th Cir. 2008). "Qualified immunity balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, — U.S. —, 129 S. Ct. 808, 815 (2009). The Supreme Court has characterized the doctrine as protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

To determine whether a government official is entitled to qualified immunity for an alleged constitutional violation, reviewing courts typically conduct a two-prong analysis established forth in *Saucier v. Katz*, 533 U.S. 194 (2001), *overruled in part by Pearson*, — U.S. —, 129 S. Ct. at 817. The first prong of the *Saucier* analysis asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right. *See Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 1774 (2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right

7

was clearly established . . . in light of the specific context of the case.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). If there is evidence to support the violation of a constitutional right, the second prong of the *Saucier* analysis asks whether qualified immunity is appropriate, nevertheless, because the defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question." *Hampton Co. Nat'l Sur., L.L.C. v. Tunica County, Miss.*, 543 F.3d 221, 225 (5th Cir. 2008) (quoting *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)).

The Supreme Court has recently clarified that the two-prong protocol established in *Saucier*, while often appropriate, is no longer mandatory for resolving all qualified immunity claims. *Pearson*, 129 S. Ct. at 818. Reviewing courts are permitted "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* Thus, the "rigid *Saucier* procedure" need not be followed in any particular sequence. *Id.* In this case, however, the Court concludes that White's allegations concerning his medical care warrant examination under both prongs of the traditional *Saucier* inquiry.

The Court pauses to note that the usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Gates v. Texas Dep't of Protective and Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d

8

481, 489 (5th Cir. 2001)). The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *Id.*

At the summary judgment stage of this case, a determination whether a constitutional right was violated for purposes of the first prong of the qualified immunity analysis overlaps substantially with Nurse Parker's contention that White's Eighth Amendment claim lacks merit. Accordingly, the Court first addresses whether White has raised a genuine issue of material fact on whether Nurse Parker committed a constitutional violation under the standard that applies to prisoners' claims concerning their medical care.

### A.     Eighth Amendment — Denial or Delay of Adequate Medical Care

To prevail under 42 U.S.C. § 1983, White must demonstrate that he was denied adequate medical care in violation of the Eighth Amendment to the United States Constitution, which prohibits cruel and unusual punishment. "Although the Eighth Amendment 'does not, by its precise words, mandate a certain level of medical care for prisoners[,]' the Supreme Court has interpreted it as imposing a duty on prison officials to 'ensure that inmates receive adequate . . . medical care.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Easter*, 467 F.3d at 463 (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)).

The Eighth Amendment deliberate-indifference standard has both an objective and subjective component. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish deliberate indifference under this standard, the prisoner must show that (1) the defendants were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed. *See id.* at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). The Fifth Circuit has stated that the deliberate-indifference standard is an "extremely high" one to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "A prison official acts with deliberate indifference 'only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Id.* (citations omitted). A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* (citations omitted).

The medical records in this case document that White has received extensive medical care while incarcerated. It is undisputed that, during the time period that relates to his complaint, White was treated at the Ellis Unit infirmary twice each day to receive insulin

injections for his diabetes. On December 6, 2004, while at the unit infirmary to receive one of his daily insulin injections, White complained to Nurse Parker that he had a "hole" in his big toe that needed to be covered before it became infected. Nurse Parker instructed White to submit a "sick call request" for an appointment with a physician. White did not follow her instructions and he did not complain again for five days.

Five days after he made his initial complaint to Nurse Parker, White complained about his toe a second time, on December 11, 2004, during the course of receiving another one of his twice-daily insulin injections. Nurse Parker referred him to a physician's assistant, who examined White the same day. The physician's assistant observed that the tip of White's big toe had an open sore with a "thick crusty area," accompanied by "yellow drainage," and a "strong foul odor." The physician's assistant scheduled White to see a physician two days later on Monday, December 13, 2004. On December 13, 2004, a physician examined White's foot at the UTMB Hospital in Galveston. During this examination, the physician ordered x-rays and medication to treat osteomyelitis.[3] The doctor also referred White to an orthopedic specialist the following week. In the meantime, White returned to the Ellis Unit where health care providers were instructed to clean the toe daily.

On December 20, 2004, White returned to the UTMB Hospital in Galveston, where he was examined by the orthopedic specialist. The orthopedic specialist examined the

---

3   Osteomyelitis is "an inflammation of bone caused by infection[.]" DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1368 (31st ed. 2007).

affected area and recommended surgery to amputate the infected toe, which had developed gangrene.[4] White returned to the Ellis Unit to await the scheduled procedure.

While at the Ellis unit infirmary to have his wound cleaned on December 28, 2004, White refused the recommended surgery, stating that he believed the toe would "get well on it's own." The nurse who was treating White at the time explained to him that he had gangrene and that it could affect the rest of his body if not treated. White stated that he understood, but continued to refuse the surgery. Eventually, on January 13, 2005, White's infected big toe was amputated at the UTMB Hospital in Galveston. After White's foot developed a "very bad diabetic infection," White had additional surgery on February 10, 2005, to remove infected ("necrotic") tissue around the wound.

White complains that Nurse Parker treated him improperly on December 6, 2004, because she failed to take his complaint seriously. White argues that diabetic patients are particularly susceptible to infection that can result in amputation and that Nurse Parker's actions were unreasonable. In support, White presents two articles regarding the importance of prevention and early intervention of diabetes-related foot problems. (Doc. # 53, at 3-4, Exhibit A). White insists that, by telling him to file a sick call request after he first complained about his toe on December 6, 2004, Nurse Parker was negligent, and that she committed medical malpractice, because she should have referred him to a physician

---

[4] Gangrene is described as an "eating sore" which features "death of tissue, usually in considerable mass and generally associated with loss of vascular (nutritive) supply and followed by bacterial invasion and putrefaction." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 772 (31st ed. 2007).

immediately or treated him to prevent gangrene, rather than requiring him to submit a sick call request.

The United States Supreme Court has made clear that decisions about whether particular diagnostic techniques or forms of treatment are indicated "is a classic example of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). A mistake in judgment or diagnosis "does not represent cruel and unusual punishment." *Id.* "At most it is medical malpractice." *Id.* The Fifth Circuit has also recognized that, even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation. *See Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). It is well established that allegations of unsuccessful medical treatment, acts of negligence, or medical malpractice "do not constitute deliberate indifference[.]" *Gobert*, 463 F.3d at 347 (citations omitted). Thus, allegations of negligence and medical malpractice will not suffice to demonstrate an Eighth Amendment claim. *See Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001).

White also complains that, by failing to refer him to a physician immediately, Nurse Parker unreasonably delayed his access to care. Delays in medical care can constitute an Eighth Amendment violation "if there has been deliberate indifference [that] results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). To the extent that White complains that Nurse Parker delayed access to care with deliberate indifference, the record clearly shows otherwise. It is undisputed that White complained about his toe for the first time on December 6, 2004, while he was receiving one of his twice-daily injections

of insulin. After Nurse Parker instructed him to file a sick call request to schedule a physician's examination, White did not follow her instructions. Instead, White allowed several days to elapse after making his initial complaint on December 6, 2004. Although White reported to the clinic every day thereafter for his twice-daily insulin injections, he did not submit a sick call request as directed or ask to see a physician again until five days later, on December 11, 2004. White offers no valid explanation for his decision to delay seeking medical care. It appears, therefore, that White did not consider his own condition to be sufficiently serious and that much of the delay he complains about was of his own making.

Viewing all of the evidence in the light most favorable to the plaintiff, as non-movant, White does not show that he was refused care or that care was delayed as the result of deliberate indifference on Nurse Parker's part. White does not otherwise demonstrate that Nurse Parker intentionally treated him incorrectly with wanton disregard for his medical condition. *See Domino,* 239 F.3d at 756. White's allegations concerning the level of care that he received, and the length of delay, are not sufficient to raise a genuine issue of material fact on whether he was treated with deliberate indifference and they do not articulate a violation of the Eighth Amendment. Thus, White fails to establish that relief is available under 42 U.S.C. § 1983, and Nurse Parker is entitled to summary judgment in her favor on this issue.

### 2. Objective Reasonableness

Because White has failed to establish a constitutional violation, the Court need not proceed to the second part of the qualified immunity analysis. *See Hathaway v. Bazany*, 507

F.3d 312, 320 (5th Cir. 2007). Nevertheless, Nurse Parker argues that, even if a violation occurred, she is entitled to qualified immunity from suit because she acted in good faith and her conduct was objectively reasonable under the circumstances. In support, she points to White's medical records, which show that White did not file a sick call request after the day he first complained on December 6, 2004, and that he did not complain about his toe again until December 11, 2004, even though he was seen in the infirmary twice a day to receive his insulin injections. (Doc. # 52, Exhibit A).

To avoid summary judgment on the defendants' qualified immunity defense, a plaintiff must present evidence to raise a fact issue "material to the resolution of the questions whether the defendants acted in an objectively reasonable manner in view of the existing law *and facts available to them.*" *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993), *cert. denied*, 511 U.S. 1019 (1994) (emphasis added). If reasonable public officials could differ as to whether the defendant's actions were lawful, the defendant is entitled to immunity. *See Malley*, 475 U.S. at 341 (1986). "Even if a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable." *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 408 (5th Cir. 2007) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)).

Notably, this is not a case in which the plaintiff was denied access to treatment by a health care provider who knew about the existence of a serious condition, but disregarded repeated requests for care. *Cf. Easter*, 467 F.3d at 463-65 (finding that the defendant was not

entitled to qualified immunity where she refused a prisoner's repeated requests for care when she knew the plaintiff had a heart condition, which was well-documented in his medical chart, that the plaintiff was experiencing severe chest pain, and that he did not have his prescribed heart medication). Likewise, this is not a case in which the plaintiff had no available alternative to obtain medical care. *See id.* As this record shows, Nurse Parker listened to White's complaint about his left toe on December 6, 2004, and advised him to submit a written sick call request. Sick call requests are the standard procedure used by TDCJ inmates to alert unit medical personnel of a need for treatment or to request medical care. The record contains numerous sick call requests filed by White at the Ellis Unit, which shows that he was familiar with this procedure and that he knew medical care was available through this system. (Doc. # 52, Exhibit A). White did not submit a sick call request as instructed, however, and he did not complain further or request additional help for five days, until December 11, 2004, even though it is undisputed that he visited the unit infirmary twice each day to receive his insulin injections. This record establishes that, by failing to submit a sick call request for a physician's examination after Nurse Parker directed him to do so, White contributed to the delay in question. Under these circumstances, White's bare allegations of unreasonableness are not sufficient to overcome the defendant's assertion of qualified immunity.

Where qualified immunity is asserted, White, as the plaintiff, has the burden to produce admissible evidence that raises a genuine issue of material fact on whether the defendants' actions were objectively unreasonable under the circumstances in view of

16

existing law and the facts known to them. *See Michalik*, 422 F.3d at 262. White has presented nothing other than his own self-serving allegations that Nurse Parker's actions were unjustified. In light of this record, which shows that White's own actions contributed to the length of delay, White's unsupported allegation that Nurse Parker's actions were unreasonable is not sufficient to meet that burden. Because White has failed to raise a genuine issue of material fact on whether Nurse Parker's actions were objectively unreasonable under the circumstances, the Court concludes that Nurse Parker is entitled to summary judgment on the defense of qualified immunity.

## IV.   CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. The defendant's motion for summary judgment (Doc. # 52) is **GRANTED**.

2. The complaint is **DISMISSED** with prejudice.

3. The order appointing counsel for the plaintiff (Doc. # 44) is **TERMINATED**.

The Clerk is directed to provide a copy of this order to the parties.

SIGNED at Houston, Texas, on March 25, 2009.

Nancy F. Atlas
United States District Judge